IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| SANDRA AFFARE, | } |
| Plaintiff, | } |
| v. | } CASE NO.: 1:22-CV-00018-CEA-CHS |
| | } JURY TRIAL DEMANDED |
| UNIVERSITY OF TENNESSEE, | } |
| Defendant. | } |

# FIRST AMENDED COMPLAINT

**COMES NOW** the plaintiff, Sandra Affare (hereinafter "Plaintiff" or "Ms. Affare"), and for her *First Amended Complaint* against University of Tennessee (hereinafter ("Defendant" or "University") avers as follows:

## I. PARTIES

1. Plaintiff is a resident citizen of Hamilton County, Tennessee. Plaintiff is female and of African American heritage.

2. Defendant is an instrumentality of the State of Tennessee, having its principal offices in Knoxville, Tennessee, and can be served through Harold Pinkley, Office of General Counsel, 505 Summer Place – UT Tower 1109, Knoxville, Tennessee 37902.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter because it involves the adjudication of a federal statute: Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*

4. Venue is proper in that a substantial portion of the events or omissions giving rise to the claim occurred in Hamilton County, Tennessee. 28 U.S.C. § 1391(b)(2).

5. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

6. On October 28, 2021, Plaintiff received a Notice of Right to Sue from the EEOC.[1]

7. Plaintiff timely initiated this action on January 26, 2022. [Doc. 1].

### III.   GENERAL ALLEGATIONS

8. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-6.

9. At all relevant times, Plaintiff served as a faculty member within the University of Tennessee constituent campus system.

10. From February 1, 2018, until July 31, 2021, Plaintiff was employed as a faculty member with the University of Tennessee Space Institute ("UTSI") in a full-time, non-tenure track appointment as an Assistant Professor of Practice.

11. Since the UTSI non-tenure track appointment ended, Plaintiff has continued to serve in a part-time, non-tenure track adjunct faculty position at the University of Tennessee at Chattanooga ("UTC").

12. In 2019, Plaintiff applied for an available full-time, tenure track faculty position in the UTC Engineering Management and Technology ("EMT") departmentDepartment.

13. All the 'voting' members of the search committee for the position were male faculty members. One member, Aldo McLean ("Dr. McLean") is of African American heritage; however, he has testified that he experienced discrimination he believes was based upon his heritage after

---

[1] The Notice of Right to Sue is attached to the original Verified Complaint for Damages. [Doc. 1].

Daniel Pack ("Dean Pack"), who, upon information and belief, is of Korean descent, became the dean of the department in 2017. This included being initially denied a promotion which necessitated an appeal that was granted. Due to the treatment that Dr. McLean felt he was subjected to, he resigned his full-time, tenured position as an Associate Professor on July 31, 2022.

14. Plaintiff was one of approximately 50 applicants for the position.

15. During the initial screening process, Plaintiff was deemed by the search committee as sufficiently qualified for the position to be granted a Zoom conference interview.

16. After Zoom conference interviews were conducted, Plaintiff was ranked sixth out of all the candidates.

17. Despite this ranking, the search committee did not include Plaintiff in the pool of candidates to be invited to campus for an in-person interview.

18. All the candidates placed in the first pool were male. None were of African American heritage.

19. One of the candidates placed in the first pool was ranked lower by the search committee than Plaintiff. Upon information and belief, the candidate is, upon information and belief, a Caucasian male. The candidate was invited despite the fact that the search committee identified similar 'weaknesses' in his candidacy as it had identified regarding Plaintiff.

20. Dr. McLean became concerned about Plaintiff not being granted an opportunity for an on-campus interview despite being objectively more qualified than another candidate who, upon information and belief, is a Caucasian male.

21. As a result of his concerns, Dr. McLean made a complaint to UTC's Office of Equity and Inclusion ("OEI").

3

22. OEI investigated and recommended to the search committee that Plaintiff be extended an opportunity to interview on campus.

23. In an email to the other search committee members, the head of the search committee, SeongDae Kim ("Dr. Kim"), who is male and of Korean heritage stated:

> There was a request from the Office of Equity and Inclusion (OEI) to invite [Plaintiff] yesterday. OEI says her minority status and current adjunct status warrant her an on-campus interview although she is lacking research publication and external funding. **I want you to be aware of what happened behind this change**.

24. No mention is made in Dr. Kim's email that Plaintiff was ranked higher by the search committee than another apparent Caucasian male similarly lacking in external funding. Notwithstanding, Dr. Kim highlights that the reason Plaintiff was now being included is because she is a minority and OEI made the request.

25. After conducting the on-campus interviews of all the Caucasian male candidates and Plaintiff, the University offered the position to to the Caucasian male candidate who was ranked lower by the search committee than Plaintiff and who similarly lacked external funding.

26. This candidate was objectively less qualified for the position than Plaintiff but was offered the position to maintain the UTC's EMT Department's policy of hiring male candidates who are not of African American heritage.

27. The candidate declined to accept the position.

28. The University then, rather than offer the position to Plaintiff, offered it to another of the male candidates who is not of African American heritage.

29. The search committee noted significant weaknesses in this candidate during the on-campus interview process, including failing to connect with the students and committee members

4

during his presentation to students and faculty. Notwithstanding, he was offered and accepted the position.

30. UTC's EMT Department has a history of excluding women and individuals of African American heritage from full-time, tenured track positions (and discriminating against the one full-time tenure tracked faculty member, Dr. McLean, after Dean Pack became the dean of the department in 2017).

31. All tenure-track faculty members in the UTC EMT Department are male. None are of African American heritage.

32. The previous six (6) tenure-track faculty hires in the UTC EMT Department are male.

33. In a previous hiring process for a full-time, tenure-track faculty position in the EMT Department after Dean Pack became dean, the final two (2) candidates recommended by the search committee to the department head, dean, and provost for hire were female. Rather than offer the position to one of the female candidates, the University canceled the search and filled the position with two male Ph.D. candidates from the University's Knoxville campus.

34. As a result of UTC's EMT Department's deliberate failure to hire females and individuals of African American descent, Plaintiff has suffered injuries and damages including failure to hire, lost wages and benefits, lost interest on wages and benefits, and failure to advance to the level of Associate Professor with tenure.

## IV. CLAIMS

**Title VII – Discrimination (failure to hire) on the basis of sex, race, and national origin**

35. Plaintiff re-alleges and incorporates by reference the averments of Paragraphs 1-34.

5

36. Plaintiff is a member of a protected class in that she is female and of African American heritage.

37. Plaintiff was subjected to an adverse employment action by Defendant's discriminatory failure to hire her for a full-time, tenure track faculty position in UTC's EMT Department and offering and ultimately awarding the position to less qualified male candidates who are not of African American heritage.

38. The foregoing actions by Defendant in failing to hire Plaintiff because she is a female of African American heritage constitute discrimination in violation of Title VII.

39. As a direct and proximate result of Defendant's discrimination in violation of Title VII, Plaintiff has suffered damages as averred more fully herein.

## V. PRAYER FOR RELIEF

40. **WHEREFORE**, Plaintiff sues for damages of not less than **$287,000.00**.

41. **WHEREFORE**, Plaintiff respectfully demands that she be placed in the next available full-time tenure track faculty position in UTC's EMT Department.

42. **WHEREFORE**, Plaintiff respectfully demands that Defendant be required to conduct mandatory, in-person diversity training for all UTC College of Engineering and Computer Science department heads, deans, associate deans, managers, and supervisors that highlights unconscious bias.

43. **WHEREFORE**, Plaintiff respectfully demands that Defendant be required to pay her reasonable attorney's fees and costs incurred in this action.

44. **WHEREFORE**, Plaintiff respectfully demands a jury be empaneled to hear the trial of this cause.

45. **WHEREFORE**, Plaintiff respectfully requests that the Court award Plaintiff any and all further relief it deems appropriate.

Respectfully submitted, this 24th day of October 2023.

**SANDRA AFFARE**

By: /s/ James Friauf
James W. Friauf (#027238)
LAW OFFICE OF JAMES W. FRIAUF
9111 Cross Park Drive, D200
Knoxville, Tennessee 37923
Tele: (865) 236-0347
Email: james@friauflaw.com
Our File No.: 23-290-EPL

*Attorney for Sandra Affare*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record via the Court's CM/ECF System this 24th day of October 2023

/s/ James Friauf
James W. Friauf