UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| SANDRA AFFARE, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| | ) | Case No. 1:22-cv-18 |
| v. | ) | |
| | ) | Judge Atchley |
| UNIVERSITY OF TENNESSEE, | ) | |
| | ) | Magistrate Judge Steger |
| *Defendant*. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant University of Tennessee's Motion in Limine[1] [Doc. 69] and its Objections to Plaintiff Affare's Pretrial Disclosures [Doc. 71]. For the reasons stated herein, the Motion in Limine [Doc. 69] is **GRANTED IN PART, DENIED IN PART**, and the Objections [Doc. 71] are **SUSTAINED IN PART, OVERRULED IN PART**.

**I.  Affare's Claims**

Before resolving these disputes, the Court must identify Affare's claims. Affare asserts that she is pursing both failure to hire (a form of disparate treatment) and disparate impact claims. [Doc. 72]. The University, on the other hand, maintains that Affare's claims are premised only on failure to hire. [Doc. 76]. In asserting that Affare brings only failure to hire claims, the University is challenging the sufficiency of a pleading. "The issue in a challenge to the sufficiency of a pleading is notice." *Carter v. Ford Motor Co.*, 561 F.3d 562, 565 (6th Cir. 2009). When a complaint's language is ambiguous as to what claims are alleged, the Sixth Circuit deploys "a

---

[1] The University styled its Motion in Limine as "Defendant's Motions in Limine Numbers 1 and 2." [Doc. 69]. As the University filed these separate motions as a single document, the Court considers them to constitute one motion with multiple parts. This does not impact the Court's analysis of the distinct issues raised by the University.

'course of the proceedings test' to determine whether defendants have received notice of the plaintiff's claims." *Id.* at 566 (citing *Harris v. Bornhorst*, 513 F.3d 503, 516 (6th Cir. 2008)). The "course of the proceedings test" requires the Court to first determine whether Affare's Amended Complaint is ambiguous as to whether it alleges disparate impact claims, and if so, decide whether subsequent developments in the litigation placed the University on notice of the claims. *See id.*

The Sixth Circuit's decision in *Carter* provides ample guidance on this issue. In *Carter*, the plaintiff's complaint included a count titled "Violations of the Family Medical Leave Act." *Id.* According to the plaintiff, this count pertained to her 2005 termination, even though her complaint did not explicitly mention the 2005 termination or "tie its allegations to any particular date or event." *Id.* at 565–66. Notwithstanding these deficiencies, the Sixth Circuit looked to the complaint's background facts section, which alleged that the plaintiff began her employment in 2001. *Id.* at 566. This allegation, according to the Sixth Circuit, "might reasonably be interpreted to provide notice that the lawsuit includes events that occurred throughout [the plaintiff's] employment[,]" including her 2005 termination. *Id.*

Unlike the plaintiff's complaint in *Carter*, the Amended Complaint is not ambiguous. A disparate impact claim challenges an employer's facially neutral policy or practice by alleging that the policy adversely affects a protected class. *Bacon v. Honda of Am. Mfg.*, 370 F.3d 565, 576 (6th Cir. 2004). Looking to the Amended Complaint, no such policy or practice is alleged.[2] Instead, the allegations center on the University's allegedly intentional discrimination. [Doc. 50]. These allegations fail to provide even the modest notice found sufficient in *Carter*. The Amended

---

[2] In fact, the only policy expressly identified in the Amended Complaint is the University's alleged "policy of hiring male candidates who are not of African American heritage." [Doc. 50 at ¶ 26]. Such a policy cannot support a discriminatory impact claim—or put the University on notice that Plaintiff is pursuing such a claim—because it is not facially neutral. *See Bacon*, 370 F.3d at 576. As for practices, the Amended Complaint alleges that the University has a practice of "deliberate[ly] fail[ing] to hire females and individuals of African American descent." [Doc. 50 at ¶ 34.] Again, because this practice is not facially neutral, it cannot support a discriminatory impact claim or put the University on notice that one is being pursued. *See Bacon*, 370 F.3d at 576.

2

Complaint is unambiguous: it does not allege a disparate impact discrimination claim. Having determined that Affare's discrimination claims are premised only on the failure to hire disparate treatment theory, the Court now turns its attention to the University's Motion in Limine.

**II.     Motions in Limine**

   **1.  Standard of Review**

Motions in limine are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (citation and internal quotation marks omitted). They are often asserted "to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 41 n.2 (1984). A ruling on a motion in limine is preliminary in nature and may change depending on how the trial unfolds. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)).

   **2.  Analysis**

The University's Motion in Limine addresses two distinct issues. First, it seeks to exclude certain "me too" testimony: (1) former University faculty member Dr. Aldo McLean's belief that he was discriminated against based on his race while employed by the University and (2) testimony concerning the legitimacy of the University's prior faculty searches and the Engineering Management and Technology ("EMT") Department's accompanying failure to hire female candidates. [Doc. 69 at 1–2]. Second, it seeks to exclude the fact that the EMT Department consists of an all-male faculty. [*Id.* at 2–3]. For the reasons that that follow, the Motion in Limine [Doc. 69] will be **GRANTED IN PART** and **DENIED IN PART.**

A. "Me Too" Testimony

The testimony concerning McLean's belief that he was discriminated against and the testimony concerning the University's prior faculty searches and EMT Department's accompanying failure to hire female candidates are forms of "me too" or "other acts" evidence. *Griffin v. Finkbeiner*, 689 F.3d 584, 598 (6th Cir. 2012) ("In the employment-discrimination-law context, 'other acts' evidence consists of testimony or other evidence of discrimination by the employer against non-party employees."). While such evidence is not per se inadmissible under Federal Rules of Evidence 401 and 403, *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 380, 128 S. Ct. 1140, 1143, 170 L. Ed. 2d 1 (2008), it is disfavored in this Circuit. *Schofield v. Amazon Logistics*, No. 2:22-cv-3025, 2024 U.S. Dist. LEXIS 97124, at *31–32 (S.D. Ohio May 31, 2024). This is because "me too" evidence "is at best only slightly relevant and is always highly prejudicial to the defendant." *Jones v. St. Jude Med. S.C., Inc.*, 823 F. Supp. 2d 699, 734 (S.D. Ohio 2011), *aff'd*, 504 F. App'x 473 (6th Cir. 2012). Thus, "me too" evidence is generally excluded unless the plaintiff can show that it "is logically and reasonably tied to her specific adverse employment actions because the same actors, reasons, and circumstances were involved." *Id.*

The challenged testimony does not meet this standard. Both the testimony concerning McLean's belief that he was discriminated against and the testimony concerning prior faculty searches and resulting lack of successful female candidates involve different circumstances than those Affare experienced during the faculty search underlying this action. Regarding McLean, the allegedly discriminatory actions taken against him appear to center around his relationship with a superior, Dean Pack, and the fact that he was denied a simultaneous grant of tenure and promotion to associate professor. [Doc. 69-1 at 4–7]. Although Affare also dealt with Dean Pack, it seems likely that the considerations underlying whether to grant a faculty member tenure and/or a

4

promotion differ from those used when hiring full-time faculty in the first instance. Regarding prior faculty searches, it seems almost certain that each would involve an almost entirely different set of circumstances than those experienced by Affare (*e.g.*, differences in available funding, the composition of the search committee, and the composition of the candidate pool) even if they also did not result in the hiring of a female candidate.

At trial, the circumstances surrounding McLean's employment and the prior faculty searches could prove more analogous to Affare's situation than they currently appear. This, however, highlights another issue with the challenged testimony. Definitively establishing whether the challenged testimony is relevant and whether its probative value is substantially outweighed by the risk of unfair prejudice would require the Court to essentially conduct a series of mini trials, one regarding McLean's allegations and one regarding every prior faculty search Affare questioned the legitimacy of. This would not only unduly extend the trial's length. It would also risk misleading the jury and confusing the issues by injecting a multitude of facts into the proceedings that have no direct bearing on whether Affare was intentionally discriminated against based on her race and/or sex.

Given the foregoing, the Court finds that the "me too" testimony concerning McLean's belief that he was discriminated against and the legitimacy of the EMT Department's prior faculty searches is inadmissible under Federal Rule of Evidence 403 because its probative value is substantially outweighed by the risks of unfair prejudice, unnecessary delay, confusing the issues, and misleading the jury. *See Hosse v. Sumner Cty. Bd. of Educ.*, No. 3:13 C 520, 2018 U.S. Dist. LEXIS 248810, at *13–14 (M.D. Tenn. July 27, 2018), *aff'd*, 776 F. App'x 902 (6th Cir. 2019) (concluding that "me too" testimony was properly excluded where "its probative value [was] substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the

jury ); *Lawson-Brewster v. River Valley Sch. Dist.*, 617 F. Supp. 2d 589, 594 (W.D. Mich. 2008) (excluding "me too" evidence because, among other things, it was unfairly prejudicial, risked confusing the issues, and would require a trial within a trial as to the validity of the "me too" allegations).

Accordingly, Affare is precluded from introducing or soliciting testimony at trial concerning either (1) McLean's belief that he was discriminated against based on his race while employed by the University or (2) the legitimacy of prior faculty searches and the EMT Department's attendant failure to hire a female candidate.

### B. EMT Department's All-Male Faculty

The University asks the Court to exclude the fact that the EMT Department consists of an all-male faculty on the grounds that it is irrelevant, confuses the issues, and would create unfair prejudice. [Doc. 70 at 9–11]. Without seeing whether and how this fact will be utilized at trial, the Court cannot say that the evidence is inadmissible for all purposes. *See United States v. Delgado*, No. 1:22-cr-20187-1, 2024 U.S. Dist. LEXIS 92713, at *16–17 (E.D. Mich. May 23, 2024) ("Motions in limine should be granted only when the challenged evidence is determined to be clearly inadmissible on all potential grounds.") (emphasis omitted). Accordingly, Affare is not barred from introducing the fact that the EMT Department has an all-male faculty at trial. That said, if discussion of all-male faculty drifts beyond the bounds permitted by the Federal Rules of Evidence, the University may of course object to it at trial. The Court will not allow any testimony or evidence at trial that fails to fully comport with the Federal Rules of Evidence.

### III. The University's Objection to Affare's Pretrial Disclosures

In addition to its Motion in Limine, the University has filed five objections to Affare's pretrial disclosures. [Doc. 71]. Specifically, the University objects to (1) Affare's designation of

6

the entirety of eight depositions; (2) the use of those eight depositions at trial absent proof that the requirements of Federal Rule of Civil Procedure 32 are satisfied; (3) the introduction of McLean's deposition testimony regarding prior faculty searches and his own feelings of discrimination; (4) the introduction of the University's EEOC Position Statement; and (5) the introduction of four documents related to prior faculty searches. Each of these objections is addressed in turn.

### 1. Affare's Designation of the Entirety of Eight Depositions

The University objects to Affare's designation of the entirety of eight depositions. [Doc. 71 at 3]. While Federal Rule of Civil Procedure 32(a)(1) allows for "all or part of a deposition" to be used under certain circumstances, "the Court 'retains a discretion to exclude repetitious matter and to require counsel to identify in his offer the parts [of a deposition] deemed relevant.'" *Martin v. Polaris, Inc.*, No. 3:22-cv-322, 2024 U.S. Dist. LEXIS 129805, at *4 (E.D. Tenn. July 23, 2024) (quoting *Zimmerman v. Safeway Stores, Inc.*, 410 F.2d 1041, 1044, n.5, 133 U.S. App. D.C. 342 (D.C. Cir. 1969) (alteration in original and citations omitted)). When a party designates an entire deposition in her pretrial disclosures, the Court may require counsel to specify the particular portions of the transcript that are relevant and limit the transcript's use accordingly. *Id.* (citing *Pursche v. Atlas Scraper & Eng'g Co.*, 300 F.2d 467, 488 (9th Cir. 1961)).

The University's objection is **SUSTAINED**. Plaintiff is **DIRECTED** to file amended pretrial disclosures on or before **September 19, 2024**. The amended disclosures **SHALL** identify the relevant portions of the eight designated deposition transcripts [Doc. 67 at ¶¶ 1–8] and provide a page and line or time designation of testimony which Affare intends to offer. The deadline for the University to file objections to these narrowed designations shall be **September 26, 2024**.

### 2. Use of the Eight Depositions at Trial

In addition to objecting to Affare's wholesale designation of the eight depositions, the University objects to Affare's use of these depositions at trial absent proof that Federal Rule of Civil Procedure 32 is satisfied. Given that the Court is ordering Plaintiff to file amended pretrial disclosures narrowing her deposition designations, this objection is **OVERRULED.** The University may renew its objection after Plaintiff files her amended pretrial disclosures or at trial.

### 3. McLean's Deposition Testimony Regarding Prior Faculty Searches and His Own Feelings of Discrimination

The University's objection to McLean's deposition testimony is premised on the same arguments and concerns raised in its Motion in Limine No. 1: Motion to Exclude "Me Too" Evidence. [Doc. 71 at 3]. For the reasons discussed *supra* Section II.2.A, the objection is **SUSTAINED**. Affare may not introduce at trial the portions of McLean's deposition testimony concerning either prior faculty searches or his own belief that he was discriminated against.[3]

### 4. The University's EEOC Position Statement

The University asserts that the position statement it filed with the EEOC regarding Affare's discrimination claims is irrelevant and should therefore be excluded pursuant to Federal Rule of Evidence 401. [Doc. 71 at 4]. Whether the position statement is relevant, however, will depend on how the facts develop at trial. *See Guyton v. Exact Software N. Am.*, No. 2:14-CV-502, 2016 U.S. Dist. LEXIS 95265, at *42–44 (S.D. Ohio July 21, 2016) (discussing circumstances where other circuits have found EEOC position statements to be relevant to a plaintiff's discrimination claims). Accordingly, the University's objection is **OVERRULED**. The University, however, may renew

---

[3] Of course, for any portion of McLean's deposition testimony to be admissible at trial, its use must satisfy the requirements of Federal Rule of Civil Procedure 32.

this objection at trial if the facts presented show that the position statement is irrelevant or otherwise inadmissible.

### 5. Documentary Evidence Related to Prior Faculty Searches

The University objects to Affare's potential introduction of four documents at trial [Doc. 67 ¶¶ 131–34; Doc. 75 ¶¶ 110–13], each related to prior faculty searches in the University's College of Engineering and Computer Science. [Doc. 71 at 4–5]. For the reasons discussed *supra* Section II.2.A, the objection is **SUSTAINED**. Affare may not introduce at trial the four documents relating to prior faculty searches [Doc. 67 ¶¶ 131–34; Doc. 75 ¶¶ 110–13].

## IV. Conclusion

For the foregoing reasons, the University's Motion in Limine [Doc. 69] is **GRANTED IN PART** and **DENIED IN PART**. Affare may not introduce or solicit testimony concerning either (i) McLean's belief that he was discriminated against based on his race while employed by the University or (ii) the University's prior faculty searches and attendant failure to hire female candidates. However, Affare may introduce the fact that the EMT Department has an all-male faculty. Regarding the University's objections to Affare's pretrial disclosures [Doc. 71], they are **SUSTAINED IN PART** and **OVERRULED IN PART**. Plaintiff is **DIRECTED** to file amended pretrial disclosures on or before **September 19, 2024**. The amended disclosures **SHALL** identify the relevant portions of the eight designated deposition transcripts [Doc. 67 at ¶¶ 1–8] and provide a page and line or time designation of testimony which Affare intends to offer. The deadline for the University to file objections to these narrowed designations shall be **September 26, 2024**.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**

9

Case 1:22-cv-00018-CEA-CHS   Document 86   Filed 09/12/24   Page 9 of 9   PageID #: 334